IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| THEAPPLIUS ANDRE GOODMAN,<br><br>  Plaintiff,<br><br>v.<br><br>COMMISSIONER OF GEORGIA DEPT. OF CORRECTIONS; ALL MEMBERS OF THE GEORGIA PARDONS & PAROLES BOARD; ALLWARDENS & D/W OF GEORGIA STATE PRISON; and CHIEF COUNSELOR & CLASSIFICATION COMMITTEE OF G.S.P.,<br><br>  Defendants. | CIVIL ACTION NO.: 6:19-cv-10 |

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, who is presently incarcerated at Georgia State Prison in Reidsville, Georgia, brings this action under 42 U.S.C. § 1983. Doc. 1. After the requisite frivolity review under 28 U.S.C. § 1915A, I **RECOMMEND** the Court **DISMISS** Plaintiff's Complaint in its entirety, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Plaintiff *in forma pauperis* status on appeal.[1] I **DENY as moot** Plaintiff's Motion that a Federal Investigation is Conducted and Motion for Summons. Docs. 9, 12.

---

[1] A "district court can only dismiss an action on its own motion as long as the procedure employed is fair. . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). A magistrate judge's report and recommendation provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to *sua sponte* grant summary judgment where a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that report and recommendation served as notice that claims would be *sua sponte* dismissed). This Report and Recommendation constitutes fair notice to Plaintiff that his suit is due

## BACKGROUND[2]

The crux of Plaintiff's action is that he has been denied a transfer to a transitional center.[3] See Doc. 1 at 5.  Plaintiff alleges he was sentenced on May 24, 1993 in Crisp County, Georgia, to life with parole for armed robbery.[4]  Id.  He claims he has asked to be placed in a transitional center, but the requests have been denied because he received a life sentence.  Id.  Plaintiff alleges the failure to release him to a transitional center constitutes discrimination (based on his status as a "lifer") and a violation of his due process rights.  Id.

Plaintiff also alleges there exists a conspiracy between the Special Assistant Attorney General, members of the Georgia Pardons and Paroles Board, and the Georgia Department of Corrections to fraudulently keep Plaintiff in prison, and Plaintiff claims this conspiracy arose after Plaintiff refused to dismiss a federal civil suit he filed in 1997.  See Doc. 8.  Specifically, Plaintiff contends that in the 1990s, the Special Assistant Attorney General told Plaintiff that if he did not drop his lawsuit, he "would make it his business to see to it that [Plaintiff] would not make his parole that was due 12/99 nor any other parole for a very, very, very long time."  Id. at

---

to be dismissed.  As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the presiding district judge will review de novo properly submitted objections.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that magistrate judge's report and recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

[2]      During frivolity review under 28 U.S.C. § 1915A, "[t]he complaint's factual allegations must be accepted as true."  Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).

[3]      Plaintiff filed his Complaint on February 19, 2019.  Doc. 1.  Then, on March 20, 2019, Plaintiff filed a document entitled "Brief & Grounds of Defendants Charged" which provides a more detailed outline of the claims raised in the Complaint.  Doc. 8.  For purposes of this Court's review under 28 U.S.C. § 1915A, the Court will construe both documents together as the operative Complaint.  See Faulk v. City of Orlando, 731 F.2d 787, 790–91 (11th Cir. 1984) (construing pro se plaintiff's three pleadings together as one complaint in determining whether plaintiff stated claim).

[4]      Plaintiff claims there was no gun or weapon involved.  Doc. 1 at 5.

2. As a result of this alleged conspiracy, Plaintiff contends he was denied parole in 1999 and every time thereafter. Id. at 2–4.

Plaintiff also complains that prison officials have not addressed grievances he filed concerning the habeas petition he filed in state court in 2014 and that this failure to address his grievances violates his due process rights. Doc. 1 at 5. Plaintiff also includes allegations that the Commissioner of the Georgia Department of Corrections failed to protect Plaintiff from an assault. See Doc. 8 at 1. Plaintiff has requested that an attorney be appointed to his case and that he be awarded damages and an immediate release from prison. Doc. 1 at 6.

## STANDARD OF REVIEW

Plaintiff is bringing this action *in forma pauperis*. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets, shows an inability to pay the filing fee, and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous, malicious, or if it fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, under 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

The Court looks to the instructions for pleadings contained in the Federal Rules of Civil Procedure when reviewing a complaint on an application to proceed *in forma pauperis*. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a

short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances).  Further, a claim is frivolous under § 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'"  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010).  Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  Twombly, 550 U.S. at 555.  Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . ." (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003))).  However, Plaintiff's unrepresented status will not excuse mistakes regarding

procedural rules.  McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

**I.    Due Process Claim Based on Denial of Parole and Transitional Center**

The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "The types of interests that constitute 'liberty' and 'property' for Fourteenth Amendment purposes are not unlimited; . . . an individual claiming a protected liberty interest must have a legitimate claim of entitlement to it."  Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989).  On the issue of parole, the United States Supreme Court has held that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979).

While states do have the power to create a liberty interest in parole that is subject to the protections of the Due Process Clause, see id. at 12, this has not happened in Georgia.  The Eleventh Circuit has concluded that there is no protected liberty interest in Georgia's parole system.  Sultenfuss v. Snow, 35 F.3d 1494, 1502–03 (11th Cir. 1994).  Further, inmates do "not have a liberty interest in . . . transitional centers, or work incentive credits."  Biester v. Lanier, 249 F. App'x 782, 783 (11th Cir. 2007).  As such, Plaintiff cannot assert a due process claim based on the alleged failure of the parole board to place him in a transitional center or the alleged failure to otherwise grant him parole.

A claim may, however, arise if the parole board "engage[d] in 'flagrant or unauthorized action[,]'" thus acting "arbitrarily and capriciously in violation of due process."  Monroe v.

5

Thigpen, 932 F.2d 1437, 1442 (11th Cir. 1991) (holding parole board violated due process when it relied on false information in plaintiff's file) (quoting Thomas v. Sellers, 691 F.2d 487, 489 (11th Cir. 1982)).  Plaintiff's allegations in this case do not describe unauthorized or arbitrary action by the parole board.  Plaintiff, in an attempt to show misconduct on the part of the parole board, alleges the parole board conspired with Special Assistant Attorney General Stephen Curry to fraudulently deny him parole due to a lawsuit Plaintiff filed in federal court over twenty years ago.  Doc. 8 at 2–4.  As part of this conspiracy, Plaintiff alleges the parole board, along with the Special Assistant Attorney General and the Georgia Department of Corrections, falsified Plaintiff's education records and thus improperly denied Plaintiff parole under O.C.G.A. § 42-9-42(c).[5]  Id.

Plaintiff does not point to any actual fraudulent records.  Instead, Plaintiff argues his academic achievements prove that the parole board's decision to deny him parole under § 42-9-42(c) was fraudulent, on the theory that he is "very far above 5th grade reading & math . . . ."  Doc. 8 at 2–3.  However, in making this allegation, Plaintiff assumes that academic performance and not the myriad other factors enumerated in § 42-9-42(c) was the basis for the parole board's

---

[5]   O.C.G.A. § 42-9-42(c) provides:

> Good conduct, *achievement of a fifth-grade level or higher on standardized reading tests*, and efficient performance of duties by an inmate shall be considered by the board in his or her favor and shall merit consideration of an application for pardon or parole.  No inmate shall be placed on parole until and unless the board shall find that there is reasonable probability that, if he or she is so released, he or she will live and conduct himself or herself as a respectable and law-abiding person and that his or her release will be compatible with his or her own welfare and the welfare of society.  Furthermore, no person shall be released on pardon or placed on parole unless and until the board is satisfied that he or she will be suitably employed in self-sustaining employment or that he or she will not become a public charge.  However, notwithstanding other provisions of this chapter, the board may, in its discretion, grant pardon or parole to any aged or disabled persons.

O.C.G.A. § 42-9-42(c) (emphasis added).

6

decision to deny parole. "[C]onclusory allegations without specific supporting facts have no probative value." Taylor v. Nix, 240 F. App'x 830, 836 (11th Cir. 2007) (citing Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000)). The reality is there are a number of reasons a parole board could deny parole under § 42-9-42(c). The Supreme Court, in reviewing the provisions of § 42-9-42(c), noted that they "illustrate the broad discretion the Parole Board possesses in determining whether an inmate should receive early release." Garner v. Jones, 529 U.S. 244, 252–53 (2000).

The fact the parole board denied parole under the broad provisions of § 42-9-42(c) does not mean the board failed to consider Plaintiff's academic achievements, or that it relied on false information in coming to its decision. Plaintiff's conclusory allegations do not indicate the parole board engaged in flagrant or unauthorized action. Rather, his allegations of fraud and conspiracy on the part of the parole board are based exclusively on conjecture and speculation. Specifically, his allegations that the parole board and the Special Assistant Attorney General conspired to keep him from parole based on a lawsuit Plaintiff filed over twenty years ago, resulting in the alleged intentional failure of the board to consider his academic records, are the sort of fanciful, delusional, or fantastic allegations that are indisputably meritless and, consequently, frivolous. See Denton v. Hernandez, 504 U.S. 25, 32–33 (1992).[6] As a result, Plaintiff fails to state a claim under the Due Process Clause. I, therefore, **RECOMMEND** the

---

[6] While Plaintiff has not specifically alleged a retaliation claim in connection with the 1997 lawsuit, the Court finds such a claim would also fail due to the tenuous connection between the alleged threat of defense counsel in 1999 and the present-day actions of the parole board. "To establish a retaliation claim under the First Amendment, a prisoner must show a causal connection between his protected speech and the harm of which he complains." Smith v. Villapando, 286 F. App'x 682, 685 (11th Cir. 2008); see also Taylor v. Nix, 240 F. App'x. 830, 836 (11th Cir. 2007) ("[G]iven the temporal remoteness of the preparation of the litigation documents and the . . . parole hearing, we conclude that these documents do not have any probative value of retaliation.").

Court **DISMISS** Plaintiff's claim that his due process rights were violated in connection with his parole proceedings.

## II.    Discrimination Claim

Plaintiff also claims prison officials discriminated against him by denying him the opportunity to be placed in a transitional center.  He claims the Warden of Care and Treatment told his counselor "not to put any lifers in for Transitional Centers or Halfway House."  Doc. 1 at 5.  Further, Plaintiff claims he has served "more time th[a]n a[n] Armed Robber w[ith] murder."  Doc. 8 at 2.

"To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (quotations and citation omitted).  When differential treatment does not affect a fundamental right or single out a suspect class, it is subject only to rational basis review.  See Cook v. Wiley, 208 F.3d 1314, 1323 (11th Cir. 2000).

As outlined above, Plaintiff does not have a fundamental right to parole or to be placed in a transitional center.  See Biester, 249 F. App'x at 783.  Furthermore, Plaintiff has not demonstrated that he is a member of a suspect class.  See Jackson v. State Bd. of Pardons & Paroles, 331 F.3d 790, 797 (11th Cir. 2003) (prisoners are not suspect class); see also Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (describing "suspect classifications" as classifications made on "basis of race, alienage, national origin, gender, or illegitimacy"); see also Wottlin v. Fleming, 136 F.3d 1032, 1036 (5th Cir. 1998) (explaining that classifying "inmates based on the type of criminal offenses for which they have been convicted does not implicate a suspect class").  Because Plaintiff's situation does not involve fundamental rights and

because he is not part of a suspect class, his claim that he was discriminated against due to his status as a lifer is subject to a rational basis review.  See Heller v. Doe by Doe, 509 U.S. 312, 319 (1993) ("[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity.").  In short, to prevail on his equal protection claim, Plaintiff needs to show that there is no rational basis for the imposition of a stricter parole requirement on prisoners with a life sentence.  See Ellison v. Ala. Bd. of Pardons & Paroles, No. 17-13235, 2017 WL 6947946, at *6 (11th Cir. Dec. 13, 2017).

The Eleventh Circuit has recognized a "legitimate governmental objective of preventing the early release of potentially violent criminals."  Cook, 208 F.3d at 1323; see also Bird v. Wyo. Attorney Gen., 712 F. App'x 742, 745 (10th Cir. 2017) ("Offenses punished by a life sentence are generally more abhorrent than those punished by a term of years.  It is therefore rational to impose more severe sanctions—such as ineligibility for parole—on the former.").  In this case, Plaintiff was convicted of armed robbery and sentenced to life in prison.  Doc. 1 at 5.  Accordingly, it follows that there exists a rational basis for denying Plaintiff placement in a transitional center.

Furthermore, to the extent Plaintiff complains other prisoners were treated more favorably than he, his claim fails.  To prevail on such a claim, Plaintiff must show he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Thorne v. Chairperson Fla. Parole Comm'n, 427 F. App'x 765, 771 (11th Cir. 2011) (citation omitted).  In this case, Plaintiff only vaguely alleges he served more time than an armed robber who also committed murder.  Doc. 8 at 2.  The law requires that "[t]o be 'similarly situated,' the comparators must be prima facie identical in all relevant respects."  Grider v. City of Auburn, 618 F.3d 1240, 1264 (11th Cir. 2010) (quotation and

9

emphasis omitted). Plaintiff's comparison of his situation to that of some unnamed murderer does not sufficiently allege intentional differential treatment of a similarly situated prisoner. See Alvarez v. Sec'y, Fla. Dep't of Corr., 646 F. App'x 858, 864 (11th Cir. 2016) ("Different treatment of dissimilarly situated persons does not violate the equal protection clause.") (citation omitted). Accordingly, I **RECOMMEND** the Court **DISMISS** Plaintiff's discrimination claim.

### III.   Damages Claim Against Parole Board Members

Even if Plaintiff could state a viable constitutional claim against the members of the parole board, he would still not be able to prevail on his claim for monetary damages. The Eleventh Circuit has long recognized that parole board members are entitled to quasi-judicial immunity from suits requesting damages based upon the decision to grant or withhold parole. Sultenfuss, 894 F.2d at 1278–79. Accordingly, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims for monetary damages from the members of the Georgia Pardons and Paroles Board.

### IV.   Prison Grievance Procedure Claim

Plaintiff also alleges that the state superior courts "refused to adhere [to] the Supreme Court Order" in his state habeas case, and that prison officials then violated his due process rights by rejecting his attempts to use the prison grievance procedure to assert grievances concerning his state habeas proceedings. Doc. 1 at 5. The Eleventh Circuit has determined that "a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure." Dunn v. Martin, 178 F. App'x 876, 878 (11th Cir. 2006). Accordingly, Plaintiff fails to state a due process claim under § 1983 in connection with the prison officials' handling

of his grievances regarding his state habeas proceedings, and I, therefore, **RECOMMEND** the Court **DISMISS** such claim.[7]

## V.     Habeas Relief

To the extent that Plaintiff is challenging his confinement in prison or his sentence, § 1983 is not the proper vehicle for obtaining such relief.[8]  "[A] prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement.  He must seek federal habeas corpus relief (or appropriate state relief) instead." Wilkinson v. Dotson, 544 U.S. 74, 78 (2005) (citations and quotation omitted).  As it appears Plaintiff was still involved in ongoing state habeas proceedings at the time he filed his Complaint, see doc. 1 at 5, the Court will not construe Plaintiff's current action as a habeas petition.  See Wilkinson, 544 U.S. at 79 ("[H]abeas corpus actions require a petitioner fully to exhaust state remedies . . . .").  Accordingly, I **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's allegations which challenge the fact or duration of his confinement.

## VI.    Failure to Protect Claim

Plaintiff makes vague allegations concerning an assault by gang members occurring in April 2016 while he was an inmate at Calhoun State Prison in Morgan, Georgia.[9]  Doc. 1 at 6.

---

[7]     Plaintiff appears to only challenge the prison officials' handling of his grievances and not the state courts' handling of his habeas petition or his underlying conviction and sentence. Even if Plaintiff did challenge the state courts' actions, Plaintiff would not have a claim because "[t]he federal courts are not empowered to order the state courts to make remedies available nor are they authorized to dictate the type of hearing which is to be conducted by the state courts." Dixon v. Beto, 472 F.2d 598, 599 (5th Cir. 1973). Additionally, as laid out in § V of this Report and Recommendation, any challenges to Plaintiff's underlying sentence or conviction would need to be pursued through a habeas petition and not a civil rights action. See Wilkinson v. Dotson, 544 U.S. 74, 78 (2005) ("[A] prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement.") (citation and quotation omitted).

[8]     In his Complaint, Plaintiff prays that he be "granted immediate release." Doc. 1 at 6.

[9]     The Court notes that venue for this claim is questionable, as any events that took place in Morgan, Georgia, occurred outside this District.

11

He further claims the Commissioner of the Georgia Department of Corrections did nothing to protect Plaintiff, despite Plaintiff writing to him in December 2015 and despite Plaintiff's parents calling the Commissioner on several occasions. Doc. 8 at 1.

"Section 1983 claims may not be brought against supervisory officials solely on the basis of vicarious liability or *respondeat superior*. A supervisor can be held liable under § 1983 if he personally participates in the alleged constitutional violation or if a causal connection exists between his acts and the constitutional infirmity." Averhart v. Warden, 590 F. App'x 873, 874 (11th Cir. 2014) (citing Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)). "The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so, or when his customs or policies result in deliberate indifference to constitutional rights." Oliver v. Harden, 587 F. App'x 618, 620 (11th Cir. 2014).

Here, Plaintiff has failed to allege any personal participation by the Commissioner in the underlying incident or any causal link between any acts of the Commissioner and the alleged assault on Plaintiff. Plaintiff has given no indication as to the contents of his December 2015 letter or his parents' phone calls to the Commissioner, nor has he indicated that these correspondences would have caused the Commissioner to conclude that Plaintiff would be at such a substantial risk of being assaulted in April 2016 so as to constitute deliberate indifference. See Oliver, 587 F. App'x at 620 ("[I]solated attacks by one prisoner on another may not constitute an Eighth Amendment violation."). Moreover, the Court finds these allegations against the Commissioner have no connection to the claims of fraud in the parole process which have been alleged against the other Defendants in this case. See Fed. R. Civ. P. 20(a)(2); Smith v. Owens, 625 F. App'x 924, 928 (11th Cir. 2015) ("[A] plaintiff may join multiple defendants in

a single action only if the right to relief asserted against them arises 'out of the same transaction, occurrence, or series of transactions or occurrences' and if 'any question of law or fact common to all defendants will arise in the action.'").

As a result, Plaintiff fails to state a § 1983 claim against the Commissioner of the Georgia Department of Corrections based on the alleged failure to protect Plaintiff. Accordingly, I **RECOMMEND** the Court **DISMISS** Plaintiff's claim against the Commissioner of the Georgia Department of Corrections.

## VII.   Request to Appoint Counsel

Plaintiff has no constitutional right to the appointment of counsel in this case. Wright v. Langford, 562 F. App'x 769, 777 (11th Cir. 2014) (citing Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999)). "Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances." Id. (citing Bass, 170 F.3d at 1320). Appointment of counsel in a civil case is a "privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987); Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985)). The Eleventh Circuit Court of Appeals has explained that "the key" to assessing whether counsel should be appointed "is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." McDaniels v. Lee, 405 F. App'x 456, 457 (11th Cir. 2010) (quoting Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993)).

The Court has reviewed the record and pleadings in this case and finds no "exceptional circumstances" warranting the appointment of counsel. While the Court understands that Plaintiff is incarcerated, this Court has repeatedly found that "prisoners do not receive special consideration notwithstanding the challenges of litigating a case while incarcerated." Hampton v. Peeples, No. CV 614-104, 2015 WL 4112435, at *2 (S.D. Ga. July 7, 2015). This case is not so complex legally or factually to prevent Plaintiff from presenting "the essential merits of his position" to the Court. For these reasons, I **DENY** Plaintiff's request to appoint counsel.

## VIII. Plaintiff's Additional Filings

Since the filing of his Complaint and his "Brief & Grounds of Defendants Charged," Plaintiff has filed three more documents that allege additional events transpiring after the filing of his Complaint. First, Plaintiff filed a document on April 12, 2019 alleging cruel and unusual prison conditions at Georgia State Prison, to include events occurring in April 2019. Doc. 9. Plaintiff then filed a document on May 15, 2019 entitled "Proof of Liberty Indifference" in which he describes ongoing prison staffing issues and complains about his recent medical treatment of a skin condition, as well as a claim of property loss occurring in 2019. Doc. 10. Plaintiff also filed a document on June 13, 2019 entitled "Submission of Proof" where he again complains of prison conditions and retaliatory conduct and requests the Court to order his transfer to another facility. Doc. 11. While the Court may "[o]n motion and reasonable notice . . . permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented," see Fed. R. Civ. P. 15(d), "[l]eave to supplement should not be granted where the 'transaction, occurrence, or event' is unrelated to the original cause of action." Jarvis v. Allison, 776 F. App'x 267, 268 (5th Cir. 2019).

As the occurrences described in Plaintiff's supplemental filings do not relate to Plaintiff's initial Complaint, which focuses on Plaintiff's frustrations with the parole system, the Court will not consider any new and unrelated claims raised by the supplemental filings. See, e.g., Skinner v. Derebail, No. 1:13-CV-44, 2014 WL 2612471, at *10 (M.D. Ga. June 11, 2014) (finding subsequent claims of inhumane prison conditions and retaliation for filing suit did not logically relate to original complaint alleging deliberate indifference to medical needs).

Even if Plaintiff argues his allegations of retaliatory treatment for filing the present action arises out of the same events underlying his Complaint, his allegations of retaliatory conduct are too conclusory and unspecific to state a claim. He generally alleges "[t]he administration here has shown harsh rage & anger & retaliation since they've been served that their being sued." Doc. 11 at 3. "To establish a retaliation claim under the First Amendment, a prisoner must show a causal connection between his protected speech and the harm of which he complains." Smith v. Villapando, 286 F. App'x 682, 685 (11th Cir. 2008). Plaintiff's conclusory allegations that certain conduct was retaliatory, without more, are insufficient to state a valid claim. See Leonard v. Monroe County, No. 18-15172, 2019 WL 5172220, at *2 (11th Cir. Oct. 15, 2019) (dismissal under § 1915 affirmed where prisoner "made only a conclusory assertion that he was placed in administrative confinement in retaliation for filing grievances.").

This lawsuit cannot be used as a vehicle for all potential claims Plaintiff has as a result of his confinement. To the extent that Plaintiff wishes to challenge prison conditions, he must do so in a separate suit. For the reasons discussed above, I construe Plaintiff's April 12, 2019, May 15, 2019, and June 13, 2019 filings as Motions to Supplement his Complaint and **DENY** these Motions to Supplement.

15

**IX.     Leave to Appeal *in Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[10]  Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons laid out above, I **RECOMMEND** the Court **DISMISS** Plaintiff's Complaint in its entirety, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the

---

[10]     A certificate of appealability is not required in this § 1983 action.

appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal.  I **DENY as moot** Plaintiff's remaining Motions.  Docs. 9, 12.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.  Furthermore, it is not necessary for a party to repeat legal arguments in objections.  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; see Symonette v. V.A. Leasing Corp., 648 F. App'x 787, 790 (11th Cir. 2016); Mitchell v. United States, 612 F. App'x 542, 545 (11th Cir. 2015).

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report to which objection are made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 26th day of November, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA